Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin Aspen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 3764 | **DATE** | 4/28/2004 |
| **CASE TITLE** | Prostka vs. Jo Anne B. Barnhart | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: Prostka's motion for summary judgment (13-1) or remand (13-2) is denied and the Commissioner's motion for summary judgment (18-1) is granted. The status hearing set for 5/20/04 is stricken.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | APR 29 2004 date docketed | 23 |
| | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 4/28/2004 date mailed notice | |
| GL courtroom deputy's initials | | Date/time received in central Clerk's Office | GL mailing deputy initials | |



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



APR 29 2004

KEVIN PROSTKA, )
)
Plaintiff, )
)
v. ) Case No. 03 C 3764
)
JO ANNE B. BARNHART, )
Commissioner of Social Security, )
)
Defendant. )
)

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Claimant Kevin Prostka ("Prostka") seeks judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying his application for a period of disability and disability insurance benefits under Title II of the Social Security Act. In cross-motions for summary judgment, Prostka asks the court to reverse the administrative law judge's ("ALJ") denial of benefits and the Commissioner asks the court to affirm that decision. Prostka has alternatively moved to remand for further proceedings. For the reasons set forth below, we deny Prostka's motions and grant the Commissioner's motion.

## PROCEDURAL BACKGROUND

Prostka applied for a period of disability and disability insurance benefits on October 9, 2001, alleging he became disabled on April 6, 2001 due to heart disease, bypass surgery, Legg-Calve-Perthes disease, and total hip replacement surgery. (Administrative Record ("Admin. R.") at 166). The Social Security Administration denied his application initially and upon reconsideration. Prostka then requested a hearing.

23

On December 3, 2002, an ALJ conducted a hearing on Prostka's claim. Prostka was represented by an attorney and both Prostka and a vocational expert testified. The ALJ issued a written decision on January 22, 2003, finding Prostka not disabled within the meaning of the Social Security Act. Prostka filed an appeal to the Social Security Appeals Council which denied his request for review, thereby making the ALJ's determination the final decision of the Commissioner. (Admin. R. at 5). Prostka then filed this complaint requesting judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## FACTUAL BACKGROUND

### I. Kevin Prostka

At the time of the administrative hearing, Prostka was 42 years old. He has completed high school. Prostka worked as a machine repairman at Grayhill, Inc. from 1996 until he was laid off in April 2001 as part of a reduction in force. Prostka alleges the onset of his disability dates back to on or about April 6, 2001. Prior to his layoff, Prostka had scheduled surgery for June 2001 to correct a congenital deformity of his left hip and his progressive arthritis. Once he was laid off from his job, Prostka sought to move up his surgery and he was able to reschedule it to April 20, 2001. During his pre-operative testing, medical personnel discovered Prostka had a reversible perfusion defect. His hip surgery was postponed so that he could undergo coronary artery bypass graft surgery (times four). The surgery was performed on April 18, 2001. Prostka's recovery from bypass surgery was complicated by pneumonia and an episode of deep vein thrombosis in the left lower extremity. (Admin. R. at 241, 252, 301). While he was awaiting hip surgery, Prostka did not work. *Id.* at 369. By September 2001, Prostka's cardiac status was "unremarkable" and he was cleared for surgery on his left hip. He underwent total left hip arthroplasty on September 26, 2001. *Id.* at 18, 256-9. Subsequently, he participated in rehabilitation therapy. Prostka was discharged from the hospital on crutches on October 2, 2001.

In December 2001, Prostka began full-time work as an auto parts delivery person. He worked 40 hours a week at $7.00 per hour. He maintained that job until September 2002, when he began repairing and rebuilding machines. In that job, he earned $13.00 per hour and worked full-time, 40 hours per week. At the time of the administrative hearing, Prostka still held this full-time job.

## II. The ALJ's Decision

After reviewing the medical evidence, the testimony of Prostka, and the testimony of the Vocational Expert, Lee Knutson ("VE"), the ALJ determined that Prostka was not disabled within the meaning of the Social Security Act. In reaching this conclusion, the ALJ conducted the five-step test as set forth in the regulations of the Social Security Administration. *See* 20 C.F.R. § 404.1520. First, the ALJ reserved ruling on whether Prostka had worked or engaged in substantial gainful activity since the alleged onset date of his disability in April 2001. The ALJ acknowledged that the job Prostka held at the time of the hearing, which the VE categorized as semi-skilled medium work, could be considered substantial gainful activity. As part of that job, Prostka reported standing or walking 6-7 hours per day, lifting 25-30 pounds, and working 40 hours per week. The ALJ stated that "[i]t would appear that this claimant can be denied on an alternative basis of substantial gainful activity." (Admin. R. at 14). Rather than dispose of his claim at step one, however, the ALJ explained that there were other bases for denying Prostka's claim. He therefore chose to reserve ruling on the issue of substantial gainful activity.

As for step two, the ALJ found Prostka impaired by reason of coronary artery disease, status post coronary artery bypass surgery, deep vein thrombosis, hypertension, sleep apnea, degenerative disease of the left knee, congenital deformity of the left hip, and depression. Next, under step three, he determined Prostka's impairments did not meet or medically equal the severity of one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. He also found that Prostka did not suffer from limitations in activities of daily living or in social functioning. The ALJ determined Prostka had a mild limitation

in maintaining concentration, persistence and pace. He stated that there was no evidence of decompensation. Given the above determinations, the ALJ then assessed Prostka's residual functional capacity.

In establishing Prostka's residual functional capacity, the ALJ considered the entire record including Prostka's testimony concerning his symptoms and reported limitations. The ALJ stated he did not consider Prostka's complaints of disabling symptoms and limitations entirely credible. He found that Prostka's medically determinable impairments precluded the following work-related activities: lifting/carrying up to ten pounds more than occasionally or up to five pounds more than frequently; standing or walking for more than two hours in an eight-hour workday; sitting for more than six hours a day; climbing ropes, ladders or scaffolds; climbing stairs, balancing, stooping, kneeling or crouching more than occasionally; squatting or crawling more than rarely; or using leg controls. He also found that Prostka was precluded from work that requires operating a motor vehicle or monitoring a screen. He concluded that Prostka does not possess the capacity to focus on, attend to, or carry out complex or detailed instructions, nor can he maintain extended attention or concentration to perform complex or detailed tasks at a sustained pace. The ALJ determined that Prostka did retain the capacity to carry out simple instructions and could maintain attention and focus as is required to perform simple tasks at a sustained pace. Given the above, under step four, the ALJ determined Prostka could perform a limited range of sedentary work but acknowledged Prostka's limitations would not allow him to perform any past relevant work.

At the hearing, the VE testified that given the hypothetical individual's specific work restrictions, Prostka could work as an information clerk, inspector/weigher/checker, cashier/order clerk/clerical, or bench assembler. Based on the testimony of the VE, the ALJ found that none of the skills Prostka acquired in his past positions would transfer to jobs within his residual functional capacity. In step five,

the ALJ did find, however, that according to the VE, there were a significant number of jobs in the region that Prostka could perform. The ALJ therefore concluded that Prostka was not under a disability as defined by the Social Security Act.

## STANDARD OF REVIEW

Under the Social Security Act, a reviewing court must sustain the Commissioner's findings if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such 'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Keppel v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence may be less than the weight of the evidence and more than a scintilla." *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004) (internal citations omitted). The reviewing court may not substitute its own judgment for that of the Commissioner, reweigh evidence, resolve conflicts, or make credibility determinations. *See Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Instead, we are to limit our review to determining whether the ALJ's decision is "both supported by substantial evidence and based on the proper legal criteria." *Scheck*, 357 F.3d at 699.

## DISCUSSION

To qualify for disability benefits, Prostka must be found disabled within the meaning of the Social Security Act. A person is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Moreover, an individual must establish that he cannot perform his prior work or any other substantial gainful activity in the national economy given his limitations and impairments. *Id.* § 423(d)(2)(A). To determine if an individual is disabled, a fact finder must follow a five-step inquiry. The claimant must show: (1) he is not presently engaged in substantial gainful

5

activity; (2) his impairment is severe; (3) his impairment is listed or equal to a listing in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) he is not able to perform his past relevant work; and (5) he is unable to perform any other work within the national or local economy. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004) (citing *Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir. 1997) and 20 C.F.R. § 416.920). If the ALJ can make a conclusive finding at any of the steps that the claimant is or is not disabled, then the ALJ need not progress to the next step. *Young v. Barnhart*, – F.3d – (7th Cir. 2004) (citing 20 C.F.R. § 404.1520(a)(4)). Once the claimant has demonstrated he meets steps one through four, the burden shifts to the Commissioner to show that the claimant can perform successfully a significant number of jobs that exist in the national economy. *Id.*

As an initial matter, the Commissioner argues that the ALJ's denial of disability benefits should be affirmed because Prostka performed substantial gainful activity within twelve months of the alleged onset of his disability. According to the Commissioner, this should end the inquiry at Step One. While the ALJ did remark, "[i]t would appear that this claimant can be denied on an alternative basis of substantial gainful activity," the ALJ specifically stated in both the findings and discussion sections of his opinion that he declined to make a finding on the issue of substantial gainful activity.[1] (Admin. R. at 14, 21). Because the ALJ refrained from making a determination about substantial gainful activity, we will not dispose of this claim on the basis that claimant might not have been able to carry his burden

---

[1] Substantial evidence does appear to support a finding of substantial gainful activity. *See Barnhart v. Walton*, 535 U.S. 212, 217 (2002) (determining agency's interpretation of regulation that a claimant is not disabled if "within 12 months after the onset of an impairment ... the impairment no longer prevents substantial gainful activity" was lawful). For the twelve months preceding the administrative hearing, Prostka worked full-time performing medium, semi-skilled work, earning between $7-13 per hour. He commenced work within eight months of the alleged onset date of his disability and within three months of his hip surgery. However, we confine our review to the reasoning, analysis and evidence supplied by the ALJ in his decision. Given our agreement with the remainder of the ALJ's decision, and because the ALJ did not rest his decision on a determination at step one, we refrain from resting our decision on the issue of substantial gainful activity.

at Step One. As the ALJ explained, other aspects of his case doom Prostka's claim for disability benefits.

Prostka asks this court to reverse the ALJ's denial of benefits because: (1) the ALJ's credibility determination was erroneous and did not follow Social Security Ruling 96-7p; (2) the ALJ erroneously relied on VE testimony that was not substantial evidence; (3) the ALJ's mental RFC determination was erroneous and incomplete. In the alternative, Prostka asks this court to remand this case to the ALJ.

I.  **Whether the ALJ's Credibility Determination Was Erroneous**

Prostka challenges the ALJ's assessment of his credibility. An ALJ's credibility findings are entitled to deference and should not be disturbed on review unless they are patently wrong. *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995); *Powers v. Apfel*, 207 F.3d 421, 435 (7th Cir. 2000) ("[B]ecause hearing officers are in the best position to see and hear the witnesses and assess their forthrightness, we afford their credibility determinations special deference."). Indeed, this court recognizes that the ALJ is in the best position to observe witnesses and that credibility determinations often involve "inarticulable elements." *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994). Under the SSA regulations, an ALJ's determination of the credibility of the claimant is proper if it sets forth specific reasons for the finding supported by evidence and is "sufficiently specific" to make clear to reviewers the weight accorded to the claimant and the reasons for that weight. *See Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001).

Prostka contends the ALJ's credibility assessment was flawed for the following reasons: the ALJ did not cite specifically to evidence that was inconsistent with Prostka's testimony; the record clearly supports Prostka's allegations of his limitations; the ALJ failed to consider factors that aggravate Prostka's symptoms in violation of SSR 96-7p; the ALJ relied upon the state agency medical reviewers

7

to support his credibility determination; and the ALJ found Prostka credible as to all his subjective complaints except for the two which would make him disabled according to the VE.

A.  Prostka's Testimony

In this case, the ALJ found Prostka's disabling symptoms and limitations "not entirely credible." The ALJ stated that Prostka, in his testimony, reported that chronic pain and fatigue prevent him from completing such tasks as dressing, bathing, walking and sleeping. He has to nap often. He testified that he had pain in his left knee associated with standing or bending. Since March 2001, Prostka reported shortness of breath. This is especially pronounced if he lifts more than 30 pounds. He sometimes becomes lightheaded with bending and suffers from episodic lightheadedness. Prostka also stated that he becomes dizzy if he does not take his medications. Prostka explained he becomes tired and performs tasks at a slower pace. He experienced burning in the extremities, especially the left leg, dating back to March 2001, and swelling in the left leg when sitting and standing. He stated he has suffered daily headaches since March 2001 but at the time of the hearing Prostka reported getting headaches a few times a month. Prostka testified that he occasionally becomes drowsy at work and episodically dozes off during the day on weekends. He also stated he occasionally has lapses of concentration at work. Prostka reported he could sleep 6-8 hours when taking Trazedone and he was prescribed Celexa in March 2002 for depression.

Prior to his hip surgery, Prostka testified that he experienced pain in his left hip and in the area of the incision from his bypass surgery. At that time, he reported that he could stand for no more than 15-20 minutes and would begin to fidget after a relatively short period of sitting. He could participate in only limited daily activities and did not work. After recovering from hip surgery in September 2001, Prostka reported being able to stand for as long as an hour continuously or for 20 minutes if he is not able to lean on something. He could sit for about an hour and walk only about 15-20 minutes due to

8

stiffness and shortness of breath. He reported that he would begin fidgeting after a short period of sitting. Since returning to work in December 2001, Prostka testified he performed few household tasks. For instance, he only occasionally helped with the dishes. He stated that mowing the lawn and other tasks took him longer than they used to. In his testimony, Prostka explained that while at work, he experienced pain when lifting or bending.

### B. The ALJ's Credibility Determinations

In reaching his conclusion that Prostka was not entirely credible, the ALJ explained that Prostka's reported work activity indicated that he participated in more daily activities than Prostka admitted at the hearing. Indeed, in his decision, the ALJ specifically considered the fact that commencing three months after his surgery, in December 2001 through September 2002, Prostka worked full-time in a job classified as semi-skilled and medium work. Then, from September 2002 through the hearing date, Prostka worked another job that included 6-7 hours of standing or walking per day (1.5-2 hours continuously) and lifting 25-30 pounds. This job was also classified as semi-skilled, medium work. The ALJ reasoned that the ability to partake in this job activity did not comport with the various limitations of daily life Prostka described in his testimony.[2] Moreover, the ALJ noted that Prostka had not received the type of medical care that one would expect for a completely disabled person. He also mentioned the RFC from state Disability Determination Services physicians supported his finding that Prostka was not disabled.

---

[2] Prostka argues that in making his credibility determination, the ALJ did not rely on inconsistencies between Prostka's ability to complete medium work and his testimony at the hearing. Rather, he characterizes this as a *post hoc* rationale by the Commissioner. However, the ALJ specifically described Prostka's reported work activities and later concluded that "claimant's reported limited daily activities are considered to be outweighed by the other factors discussed in this decision. As mentioned earlier, the record reflects work activity after the alleged onset date. This work activity indicates that the claimant's daily activities have, at least at times, been somewhat greater than the claimant has generally reported." (Admin. R. at 20). Therefore, the rationale is not *post hoc*, it is the reasoning used by the ALJ himself.

9

Prostka argues that the ALJ did not cite to evidence that was inconsistent with Prostka's testimony. However, the ALJ specifically explained that the objective findings in the case failed to provide strong support for Prostka's allegations of disabling symptoms and limitations. Indeed, the ALJ addressed the medical reports in his opinion and found them to discredit aspects of Prostka's testimony. For instance, the ALJ pointed out that the records and the opinions of the treating and examining physicians did not indicate that they opine that Prostka is disabled or "has limitations greater than those determined in this decision." (Admin. R. at 20). In his written opinion, the ALJ reviewed the medical records in detail. Although pain, discomfort and difficulty ambulating are noted immediately following his hip surgery in Fall 2001, the records contemporaneous to Prostka's return to work and the records for the year prior to the hearing indicate his improvement.[3] For instance, the ALJ explained that on November 18, 2001, Dr. Warren Jablonsky, an orthopedist, reported on physical examination, "pain free left hip range of motion with increased ambulation, though gait was Trendelenberg." (Admin. R. at 19). A report on January 10, 2002 recorded no significant pain, but some adductor muscle soreness with lengthy walking. Reportedly, "hip range of motion was painless." *Id.* The doctor noted it would be about one year before walking improved, but did not foreclose current walking or standing. The ALJ also acknowledged that Prostka complained of sleep problems to Dr. Brent Petersen, his treating physician, in December 2001. Testing revealed moderate obstructive apnea and he was prescribed CPAP. The ALJ noted, however, that Prostka admitted that he did not follow up at the sleep clinic.

---

[3] The ALJ acknowledged that one record from a treating physician, Brent Petersen, did state that Prostka had the following limitations as of November 2, 2001: inability to walk or sit, capacity to walk 50 feet without an assistive device, walking limited to 1-2 blocks, cane required, limitation to 30 minutes of sitting and 15-20 minutes standing. Dr. Petersen also noted "no work or forward bending." (Admin. R. at 19). The ALJ noted that "the stated limitations are not wholly consistent with the record of treatment and that they are in excess of those noted by orthopedist Dr. Jablonsky. The limitations, accordingly, are not deemed wholly persuasive." (Admin. R. at 19). These limitations also do not resurface in later records.

Prostka also reported at the hearing that he had experienced no episodes of dozing at jobs since December 2001. On February 18, 2002, Dr. Jablonsky recommended Prostka refrain from having to stand or use his lower extremities for the entire work day. Each of these medical reports documenting Prostka's condition do not support the full range of limitations about which Prostka testified at the hearing.

Prostka argues that his disability application and various medical reports in the Fall of 2001 are consistent with his testimony. Yet, the reports to which he points were made immediately following his hip surgery. Prostka's complaints of pain, limited range of mobility, and discomfort subsequent to his surgery are duly noted in the ALJ's opinion. The opinion also describes more recent records which note improvements in range of motion and lack continued complaints of pain. In fact, the records contain such notations as "patient denies shortness of breath on exertion. He denies any lower extremity swelling or cramping" ; "without significant complaints of pain"; "no evidence of pain with range of motion of the hip." *See, e.g.*, Admin. R. at 19-20; 335, 407-409.[4] While the ALJ did not compare within the paragraph assessing Prostka's credibility each medical record to each of Prostka's complaints at trial, he was not required to. He specifically stated "the objective findings in this case fail to provide strong support for the claimant's allegations of disabling symptoms and limitations." (Admin. R. at 17). Later, when addressing the reasons for finding Prostka not entirely credible, he explains, "even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to claimant's medical condition ... in view of the status of the medical evidence..." (Admin. R. at 20). Contrary to Prostka's assertions, the medical evidence does not support Prostka's account of the degree to which he is limited in his daily and work activities.

---

[4] Although Prostka argues that his complaints of pain and swelling while performing his delivery job evidence he continued to experience symptoms after hip surgery, Prostka points to no medical records to substantiate these complaints.

11

Prostka also contends that it was inappropriate for the ALJ to cite to the findings of the state agency medical reviewers as support for his determination that Prostka's testimony was not entirely credible. This is especially so, he asserts, because the state reviewers did not personally examine him. Prostka suggests reliance on the state reviewers' RFCs is additionally flawed because the RFCs were prospective and the conclusions conflict with the record as a whole. We disagree. First, it appears as though the ALJ cited the state reviewers' findings to simply support his overall conclusion that Prostka was not disabled, rather than as evidence discrediting Prostka's testimony. *See* Admin. R. at 20. Second, the ALJ acknowledged that these physicians were non-examining and accordingly determined that they did not deserve as much weight as those of examining or treating physicians. The ALJ merely explained that the state agency medical reviewers' opinions were consistent with other evidence and did deserve some weight.[5] (Admin. R. 20). We find it proper for the ALJ to consider as part of his decision the opinions of the physicians employed by the State Disability Determination Services. *See, e.g.*, SSR 96-7p, 1996 WL 374186, *8 ("[I]f the case record includes a finding by a State agency medical ... consultant ... on the credibility of the individual's statements about limitations or restrictions due to symptoms, the adjudicator ... must consider and weigh this opinion ... and must explain the weight given to the opinion in the decision."); *see also Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004) ("The ALJ may properly rely upon the opinion of these [state agency] medical experts.").

Additionally, Prostka contends that the ALJ did not follow Social Security Ruling 96-7p in making his credibility determination. Specifically, Prostka asserts that the ALJ was required to consider factors that aggravate his symptoms, namely, his allegation that it is only by overextending himself that he is able to complete his work. Prostka argues that because he is forced to work out of financial need,

---

[5] Contrary to Prostka's assertions, the ALJ did not neglect to address that the state agency physicians' reports were projections. The ALJ specifically stated that the physicians' opinions of Prostka's limitations were "projected... for September 2002." (Admin. R. at 19).

he must endure the worsening of his symptoms. For instance, he dozes at work, returns home exhausted, is slower at performing tasks, and experiences swelling when he has to sit for extended periods of time. Prostka also states that the ALJ neglected to evaluate the effects of his numerous medications, as required by SSR 96-7p. But, as required by SSR 96-7p, in evaluating Prostka's symptoms, the ALJ not only consulted the medical records, but also took into consideration Prostka's testimony of his symptoms, his reported daily activities, his medications, and the state agency physician's findings. The ALJ specifically discussed Prostka's symptoms since returning to work: "At work, the claimant experiences pain on lifting and bending"; "Although able to sit for about an hour, he begins to fidget...Fidgeting ... may include elevation of the lower extremity"; "Since returning to work in December 2001, he does few household tasks. He may occasionally help with the dishes. Tasks like mowing the lawn take him longer than before." (Admin. R. at 16-17).

The ALJ also noted that Dr. Jablonsky, his orthopedist, opined that Prostka could not continuously stand or use his lower extremities for the entire work day. Additionally, the ALJ cited projections by both state agency physicians that Prostka would be able to perform work by September 2002. Moreover, in the RFC, Prostka is precluded from standing or walking for more than a combined total of two hours in a workday or more than 15 minutes continuously, he must be able to alternate between sitting and standing at will, and may not perform work with the lower extremities. Accordingly, the ALJ took all these reports into account when he stated that Prostka could not perform past relevant work.

Furthermore, the ALJ addressed Prostka's testimony as to the effects of his numerous medications. *See* Admin. R. at 15-16 ("He has taken Vioxx, Vicodin, and Darvocet, but the claimant's medications have not been able to effectively lessen his pain. In addition, the medication causes side effects such as numbness, tingling, weakness and fatigue."). The ALJ pointed out, however, that Prostka

13

admitted at the hearing that he had experienced no episodes of dozing at the job since December 2001. Prostka did testify that he had experienced problems with his pace and concentration since returning to work, and the ALJ accordingly found that he does not have the capacity to focus or carry out complex or detailed instructions or maintain extended concentration. In sum, we find the ALJ did address the elements of SSR 96-7p in assessing Prostka's credibility, including Prostka's testimony about the symptoms he has experienced since returning to work.

Finally, Prostka argues that in making his credibility determination, the ALJ took some of Prostka's complaints into consideration but provided no explanation for his rejection of other complaints. Specifically, Prostka argues he testified that he needed to have his legs elevated and to walk around after sitting, two limitations that he asserts would make him disabled under the Act. Social Security Ruling 96-7p specifically states, "[i]n making a finding about the credibility of an individual's statements, the adjudicator need not totally accept or totally reject the individual's statements. Based on a consideration of all of the evidence in the case record, the adjudicator may find all, only some, or none of an individual's allegations to be credible." SSR 96-7p, 1996 WL 374186, at * 4. In this case, the ALJ did not ignore Prostka's complaints, but rather considered them in light of all the evidence in the record. He gave weight to complaints that were documented in the record and that would comport with Prostka's ability to work full-time at a medium, semi-skilled job for the year prior to the hearing. He accepted Dr. Jablonsky's suggestion that Prostka perform work involving only minimal standing and incorporated a sit/stand option and simpler tasks into his RFC.[6] While he did not go into detail about

---

[6] Prostka argues that because he reports that he is unable to perform at an acceptable pace at his current job, he could not keep pace at any job. Similarly, if he is in pain and discomfort at his current job, he could only be sporadically available to work in another job. Prostka overlooks the fact that the ALJ acknowledged his complaints about his current semi-skilled, medium work job and proposed an RFC that incorporated more breaks, simpler tasks, and less standing. The ALJ found that there still were significant jobs in the economy Prostka could perform accommodating his limitations.

why every single complaint of Prostka's was not accommodated in the RFC, an ALJ need not evaluate in writing every piece of evidence in the record. *See Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995). Moreover, an ALJ's hypothetical question need only include those work-related limitations supported by the medical evidence and found to exist by the ALJ. *See Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002).

Here, the ALJ did not accommodate every complaint Prostka made at the hearing, but that was because he did not find Prostka entirely credible. No medical record or evaluation mentions the two limitations Prostka now argues the ALJ dismissed in error. Additionally, a review of the hearing transcript reveals only that Prostka mentioned that while at home "I get up and walk around ... you know switch the position a bit." (Admin. R. at 65). When asked by his attorney, "does the fidgeting include the elevation of your legs," he answered, "It could, if need be." *Id.* at 81. When asked "if you were in a position where you were not allowed to recline, where you have to sit like you're sitting now during the course of the day--," he interjected, "I would just have to shift more, or stand up, you know get around a little bit." *Id.* at 85. We do not find error in the ALJ's decision to omit from his written opinion an account of this testimony, especially given the absence of any record or evaluation suggesting that Prostka actually needs to elevate his legs at will or sit/stand and walk around at will.

In sum, we conclude that the ALJ's credibility determination and analysis are articulated sufficiently in the decision and his conclusions are supported by substantial evidence. We cannot say the ALJ was patently wrong and accordingly defer to his credibility determination.

## II. Whether the ALJ Erroneously Relied on VE Testimony

Prostka next argues that the ALJ erroneously relied on VE testimony that "was not substantial evidence." His main contentions are: (1) that the VE did not properly account for Prostka's ability to stoop only occasionally in recommending bench assembly jobs; and (2) that the VE was unable to verify

15

that all cashier positions that he included in his calculations were full-time.[7] As such, Prostka contends that the ALJ should not have relied on the VE's testimony. Even if we agreed entirely with Prostka's allegations of error, we still would find that the ALJ had substantial evidence to support his determination that Prostka could perform a significant number of jobs existing in the national economy. Were we to disregard the two types of jobs challenged by Prostka on appeal, there remain over 6000 positions in the Chicago Metro area that Prostka would be able to perform. Therefore, we find that the vocational expert's testimony was sufficient to meet the Commissioner's burden of demonstrating that Prostka can perform jobs that exist in the economy given his limitations.

## III.     Whether the ALJ's Mental RFC Determination was Erroneous or Incomplete

Prostka argues that the ALJ's discussion of Prostka's limitations "nevertheless leaves unanswered the question of Plaintiff's degrees of limitation in the four specified functional areas required in a mental RFC analysis: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." (Motion, at 26). The Social Security regulations pertaining to evaluations of mental impairments do identify the four functional areas listed by Prostka as areas in which the ALJ is to rate the degree of a claimant's functional limitations. *See* 20 C.F.R. § 404.1520a(c)(3). However, Prostka overlooks the ALJ's specific finding in his written decision that "[Prostka] has no limitation in activities of daily living or in social functioning and a mild limitation in

---

[7] Prostka also argues that the ALJ did not comply with Social Security Regulation 00-4p by failing to ask on the record whether the VE's testimony conflicted with the Dictionary of Occupational Titles. That duty arises only if the claimant explores a discrepancy between the VE's testimony and the DOT. The VE stated that he looked at sedentary jobs "as described by the DOT." *See, e.g.*, Admin. R. at 100. The ALJ also specifically asked, "And the jobs we're talking about, they're pretty much within the characteristics for those types of jobs, as set out in the DOT?" to which the VE answered in the affirmative. *Id.* at 90. Finally, the ALJ noted in his written opinion that "[t]he witness further reported that the identified jobs are within the characteristics for such jobs as noted in the DOT." *Id.* at 21. Given this evidence, Prostka's argument that the ALJ failed to inquire about whether the VE's testimony conflicted with the DOT is misplaced.

maintaining concentration, persistence and pace. There is no evidence of decompensation." (Admin. R. at 14).

Additionally, at the hearing, the ALJ recognized that only one record submitted by Prostka documented depression and it dated back to February 2002. The ALJ therefore asked Prostka if additional records existed or if there was any treatment record for the depression during the ten months prior to the hearing.[8] (Admin. R. at 32). Prostka's attorney verified that the last record on file was indeed from February 2002. During the hearing, the ALJ probed into Prostka's depression, focusing his questioning on when Prostka began experiencing symptoms, the medication he was prescribed, whether it helped relieve his symptoms, and how it affected his daily tasks. For example, he asked Prostka if he was participating in therapy, which he was not. Prostka explained, "[h]e hasn't prescribed no therapy, he thought it was just with everything I've been through, between the bypass, it's kind of normal he said." *Id.* at 68. When asked how he felt, Prostka explained,"I don't know, it seems like I have an I don't care attitude about some things. You know I hate sitting in traffic anymore, it used to be I could drive ten hours a day, and not even think about it, you know on vacations or something. Now I don't even hardly want to get in the car, to go to and from work. Its just people aggravating you know." *Id.* at 69. When asked about his pace, he stated, "I am slower than I used to be, I mean I used to be able to do things a lot better, but I can't bend like I used to, to get under a machine." *Id.* Similarly, the ALJ questioned Prostka about his ability to work with others, his capacity to work, his levels of concentration, and probed into the causes for his reports of a decrease in pace.

The ALJ acknowledged that Prostka was being treated for depression with Celexa and specifically addressed his ability to get along with others, his "not care" attitude, his slower pace at work,

---

[8] Because a diagnosis of depression appeared in the record for the first time in February 2002, depression was not included in Prostka's application for disability insurance benefits submitted in October of 2001.

and his occasional lapses in concentration. He also found that the medical records did not identify any symptoms regarding his depression. The ALJ accommodated Prostka's reported slower pace and lapses in concentration in his RFC. In all, the ALJ took into consideration Prostka's complaints and specifically addressed the four functional areas enumerated by Prostka. We accordingly find no error in the ALJ's treatment and assessment of Prostka's depression.

## CONCLUSION

The ALJ's decision is supported by substantial evidence. For the foregoing reasons, Prostka's motion for summary judgment or remand is denied and the Commissioner's motion for summary judgment is granted. It is so ordered.

MARVIN E. ASPEN
United States District Judge

Dated 4/28/04